```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

ANDREA MADDEN,                      :
                                    :   NO. 1:08-CV-374
          Plaintiff,                :
                                    :   **OPINION & ORDER**
                                    :
     v.                             :
                                    :
                                    :
CINCINNATI CHILDREN'S HOSPITAL      :
MEDICAL CENTER, ET AL.,             :
                                    :
          Defendants.

This matter is before the Court on Cincinnati Children's Hospital Medical Center (the "Hospital") and Kevin Yelton's (the Hospital and Yelton are collectively referred to as "Defendants") Motion for Partial Summary Judgment (doc. 19), Plaintiff Andrea Madden's Memorandum in Opposition to Defendants' Motion for Summary Judgment (doc. 23), and Defendants' Reply Brief in Support of Their Motion for Partial Summary Judgment (doc. 27).

## I.  BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint (doc. 13), Defendants' Motion for Partial Summary Judgment (doc. 19), and Plaintiff's Opposition thereto (doc. 23).

Plaintiff was employed by the Hospital for approximately six years before her termination in April, 2007 (doc. 13). The last position held by Plaintiff at the Hospital, the one from which she was discharged, was Clinical Engineer Technician II (Id.). One of the tasks of a Clinical Engineer Technician II is to perform preventative maintenance on certain pieces of medical equipment

(doc. 19).  Each piece of electronic medical equipment requires its own set of tests, and they are to be performed on a regularly-scheduled basis according to the manufacturer's specifications (Id.).  After performing the required maintenance, the technician is to record the data on "PM sheets," which include the date the maintenance was done, a sticker that corresponds to the piece of equipment tested, and the technician's initials (Id.).  The Hospital relies on the electronic medical devices tested and maintained by the technicians and requires that the preventative maintenance be done properly and as scheduled (Id.).  The parties agree that PM sheets should not be signed and dated in advance of performing the maintenance (Id.).

On the morning of March 22, 2007, before Plaintiff began her shift, one of Plaintiff's co-workers allegedly found a stack of PM sheets that had already been dated and initialed by Plaintiff for that day and the following day (Id.).  The co-worker gave the sheets to Plaintiff's supervisor, Yelton, who allegedly became concerned that Plaintiff had falsified the PM sheets (Id.).  Yelton claims to have conducted an investigation and to have terminated Plaintiff's employment because of falsification (Id.).  Plaintiff insists that she did not complete any PM sheets without having done the maintenance and that she did not predate any forms (doc. 23).  Instead, she states that she routinely recorded the maintenance data on separate paper so as not to contaminate the hospital rooms with the multiple PM sheets required for each room and then

transferred the data to the PM sheets at a later time at her desk (Id.). She admits that she may have made a mistake on the date but states she was not given an opportunity to correct her mistake as others often were, and she was presented with no evidence of the allegations against her (Id.).

Yelton was Plaintiff's supervisor at the Hospital during the last two years of her employment (Id.). Prior to reporting to Yelton, Plaintiff received good reviews from her supervisors and the Hospital reported no problems with her employment (doc. 23). During the time she was supervised by Yelton, Plaintiff, alone and with and her co-worker Alero Olomajeye ("Olomajeye"), filed multiple complaints of sex discrimination, retaliation and the creation of a hostile work environment against Yelton, claiming that, inter alia, male employees were paid at higher rates; male employees were allowed opportunities for flexible schedules that were denied Plaintiff; alleged errors of male employees were not reported or investigated as errors of female employees were; requests for paid time off from male and female employees were treated differently; and evaluations of Plaintiff and Olomajeye were given months later than those of male employees (Id.). Plaintiff claims that after lodging these complaints, she was finally subjected to "screaming" by Yelton in front of all of her co-workers and later terminated (Id.).

Further, between December 8, 2005, and March 27, 2007, Plaintiff "continually" applied for leave pursuant to the Family

Medical Leave Act ("FMLA") because of severe migraine headaches that at times required hospitalization (doc. 13). On June 10, 2006, Plaintiff received approval from the Hospital for intermittent leave pursuant to the FMLA (Id.). Plaintiff renewed her certification for intermittent leave on November 28, 2006, and on that same day faxed information to the Hospital from her physician certifying that she was under the physician's care for a medical condition that would require her to intermittently have leave from work (Id.). On January 9, 2007, Plaintiff informed Yelton that she would be absent pursuant to her FMLA leave (Id.). On the next day, she was informed by the Hospital that the Hospital would not approve her use of the FMLA leave because of alleged inappropriate use in the past (Id.). As a result of this notification, Plaintiff met with Yelton and other staff at the Hospital and was given a form for her physician to use to certify her medical condition and need for leave, which form was submitted on January 15, 2007 (Id.). The Hospital denied her FMLA request on January 19, 2007, with a letter dated January 11, 2007 (Id.). On March 23, 2007, Plaintiff again met with her physician, who again certified her medical condition and need for leave, which certification was sent to the Hospital (Id.). On March 27, 2007, the day Plaintiff was suspended allegedly pending the investigation regarding the PM sheets, a warning was noted on her attendance record for absenteeism (Id.). Defendants do not present facts contradicting Plaintiff's FMLA-related facts but, instead, argue

that Plaintiff has produced no evidence that her use of FMLA leave contributed to their decision to terminate her (docs. 19 and 27).

**II. LAW AND ANALYSIS**

Summary judgment is appropriate when there is no dispute as to a material question of fact and one party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. This Court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Only disputed material facts, those "that might affect the outcome of the suit under the governing law," will preclude summary judgment. Id. at 248. The function of the court in assessing a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. If after reviewing the record as a whole a rational fact-finder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Plaintiff's first and second claims are that the Hospital violated the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.

("FMLA"), because the Hospital interfered with her FMLA rights and retaliated against her, through termination, contra to her rights under the FMLA (doc. 13). Plaintiff's third claim is that Defendants discriminated against her because of her sex in violation of Ohio Revised Code §§ 4112.02(a) and 4112.99 (Id.) Defendants' Motion for Partial Summary Judgment seeks summary judgment only as to Count II, Plaintiff's FMLA retaliation claim, and Count III, Plaintiff's sex discrimination claim.

### A. FMLA Retaliation

The FMLA entitles an "eligible employee" to up to twelve weeks of leave per year if the employee has a "serious health condition" that prevents the employee from performing the functions of her job. 29 U.S.C. § 2612(a)(1)(D); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005). An employer may not discriminate or retaliate against an employee for taking FMLA leave. 29 U.S.C. § 2615(a)(2). In particular, an employer is prohibited from "us[ing] the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); Arban v. West Publ'g Corp., 345 F.3d 390, 403 (6th Cir. 2003). The Sixth Circuit recently affirmed that it applies Title VII precedents to FMLA retaliation claims. Hunter v. Valley View Local Schools, – F.3d —, 2009 WL 2601863 (6th Cir. 2009)(analyzing use of Title VII precedent for FMLA cases in light of recent Supreme Court decision disallowing such precedent for certain age-related discrimination claims).

Accordingly, if Plaintiff presented direct evidence that the Hospital discriminated against her because of her FMLA leave or because of her sex, then the burden shifts to the Hospital "to prove...that it would have made the same decision absent the impermissible motive." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 707 (6th Cir. 2008)(quoting DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004)). If, however, Plaintiff produced only circumstantial evidence of unlawful conduct, the Court analyzes her claim under the McDonnell-Douglas burden-shifting paradigm. Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007), citing McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).

Here, Plaintiff has presented no direct evidence of retaliation. Accordingly, to establish her prima facie case at the summary judgment stage, she must present evidence such that "a reasonable jury could conclude that [she] suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." Macy v. Hopkins County School Bd. of Educ., 484 F.3d 357, 365 (6th Cir. 2007). This process is not formulaic and rigid, and the prima facie showing is not an onerous burden. Bryson, 498 F.3d at 570-71. Here, Plaintiff can meet this burden by adducing evidence that (1) she engaged in an activity protected by the FMLA; (2) the Hospital took an employment action adverse to her; and (3) there was a causal connection between the protected activity and the adverse employment action. See Daugherty, 544 F.3d at 707.

If Plaintiff establishes her prima facie case, the burden then shifts to the Hospital to proffer a legitimate, non-retaliatory reason for the adverse employment action. See Bryson, 498 F.3d at 570. If the Hospital meets this burden, Plaintiff must then demonstrate that the proffered justification was merely pretext. Id.

Here, Plaintiff applied for leave pursuant to the FMLA on numerous occasions for a medical condition that her physician certified could necessitate intermittent leave (doc. 13). Defendants do not dispute that Plaintiff engaged in a protected activity by requesting and, it appears at times, receiving approval for, leave pursuant to the FMLA. Therefore, Plaintiff meets the first prong of the prima facie showing. The second prong is also clearly met, as Plaintiff's employment at the Hospital was indisputably terminated. To the extent they contest the prima facie showing, Defendants contend that Plaintiff has failed to produce evidence of the required causal connection because "Plaintiff's termination in 2007 had nothing to do with any exercise of rights under the FMLA" (doc. 19).

Defendants' mere assertion of lack of causation misses the point. The question is whether Plaintiff has adduced evidence such that a reasonable jury could draw an inference of "unlawful discrimination." See Macy, 484 F.3d at 365. The Court finds that she has. Proximity in time between a request for FMLA-protected leave and an employee's discharge can suffice to satisfy the

causation prong of the prima facie case. Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 314 (6th Cir. 2001). Here, Plaintiff's leave was either questioned or denied in the months leading up to her termination (doc. 13). In addition, a warning about her absenteeism was noted on the same day Defendants suspended her allegedly because of the discrepancy in the PM sheets (Id.). The Court thus finds proximity in time close enough such that a reasonable jury could infer unlawful discrimination. Plaintiff has succeeded in making her prima facie showing, which shifts the burden to Defendants.

As their legitimate, non-retaliatory reason for Plaintiff's discharge, Defendants proffer Plaintiff's alleged falsification of the PM sheets (docs. 19 and 27). Certainly, if true, falsification of records relating to the maintenance of electronic medical equipment at the Hospital would be a legitimate reason for Plaintiff's discharge. But, because the Court finds that there are genuine issues of material fact with respect to this alleged falsification, the Court believes that a reasonable jury could find this reason pretextual. In short, Defendants claim that Plaintiff's employment was terminated because of alleged falsification of the PM sheets (docs. 19 and 27), and Plaintiff claims that she did not falsify any records (doc. 23). Defendants are correct that a plaintiff's mere denial of the employer's legitimate reason, without more, is not sufficient evidence of pretext to overcome a motion for summary judgment. See, e.g.,

Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992). Here, however, Plaintiff has not simply denied that she falsified records. Instead, she not only denies it but has proffered evidence creating a genuine issue of material fact regarding the context in which Plaintiff was dismissed, which supports the reasonable inference that the alleged falsification was merely pretext for termination in retaliation for her FMLA use. Plaintiff has adduced evidence from which a jury could infer that she was disciplined for absences that included protected medical leave and that Defendants were motivated to terminate Plaintiff because of her asserted FMLA rights. Accordingly, Plaintiff has established a genuine issue of material fact as to her retaliation claim pursuant to the FMLA. Summary judgment on this claim is not appropriate.

**B. Sex Discrimination in Violation of Applicable State Law**

Plaintiff claims that Defendants violated Ohio Revised Code §§ 4112.02(a) and 4112.99 by impermissibly discriminating against and treating her differently because of her sex (doc. 13). Chapter 4112.02 of the Ohio Revised Code prohibits an employer from terminating an employee on the basis of color, religion, sex, military status, national origin, disability, age or ancestry. Ohio Rev. Code §4112.02. Because Ohio anti-discrimination laws prohibit the same conduct as Title VII, state claims are generally construed in the same manner as federal laws. See Shoemaker-Stephen v. Montgomery County Bd. of Com'rs, 262 F.Supp.2d 866, 874 (S.D.

Ohio 2003).

Accordingly, as Plaintiff has not offered direct evidence of sex discrimination, the Court will again employ the McDonnell-Douglas burden-shifting analysis. To establish a prima facie case of sex discrimination, the Sixth Circuit has held that a plaintiff must show that "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or, [a] similarly situated non-protected employee [ ][was] treated more favorably." Peltier v. United States, 388 F.3d 984, 987 (6th Cir. 2004).

Plaintiff argues that similarly situated male employees were treated more favorably than she was (doc. 13). Defendants, meanwhile, do not refute any of the allegations of difference in treatment; instead, they assert that Plaintiff's claim must fall as a matter of law because Plaintiff insinuated that the discrimination was based on her sexual orientation, and Ohio does not recognize a cause of action for such discrimination (docs. 19 and 27). While it is true that Plaintiff does note that her sexual orientation was known to Defendants and claims she was discriminated against because of that, Plaintiff also alleged behavior demonstrative of discrimination on the basis of sex and claims she was discriminated against because she is a woman, a cause of action Ohio clearly does recognize. Although not raised by either party, this is not a case where a plaintiff is attempting

to "bootstrap" sexual orientation into Title VII. See Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 764 (6th Cir. 2006). Plaintiff here does not argue that she was terminated because she did not conform to gender stereotypes. See id. Instead, Plaintiff argues that Yelton created an environment that was hostile to women, where men were treated more favorably and where she, in particular, suffered discrimination because she is a woman (doc. 13).

As to her prima facie case, Plaintiff clearly meets the first three criteria: she is a woman, thus a member of a protected group; her employment was terminated; and it appears she was qualified for the position. To meet the fourth criterion, Plaintiff does not argue that she was replaced by a man but, instead, that similarly situated men were treated more favorably (doc. 13). Specifically, she alleges that her male colleagues were paid at higher rates; that her male colleagues were allowed opportunities for flexible schedules that were denied Plaintiff; that alleged errors of male employees were not reported or investigated or disciplined the way her alleged errors were; that requests for paid time off from male and female employees were treated differently; and that evaluations of Plaintiff and one of her female colleagues, Olomajeye, were given months later than those of male colleagues (Id.). Defendants offer no proof to contest these allegations. The Court therefore finds that Plaintiff has met her prima facie case of sex discrimination.

The McDonnell-Douglas burden-shifting requires that

Defendants proffer a legitimate, non-discriminatory reason for Plaintiff's termination, which Plaintiff can rebut on the basis of pretext. See McDonnell-Douglas, 411 U.S. 792. Defendants offered nothing, merely resting on the assertion that Plaintiff's claim fails as a matter of law (docs. 19 and 27).

Presumably, however, Defendants would argue, as they did in the FMLA-retaliation context, that Plaintiff's alleged falsification of the PM sheets was the legitimate, non-discriminatory reason for her termination. As the Court noted above, if true, that reason certainly would be legitimate grounds for termination. However, the Court remains unpersuaded that Defendants' motivations were not because of sex-based animus and that the allegations of falsification were not mere pretext. Plaintiff has offered evidence of a long history of complaints of discriminatory treatment, and a reasonable jury could infer from this evidence that Defendants had simply tired of the complaints and terminated her employment under the pretext of falsification of records. In addition, the evidence offered by Plaintiff that male employees who made mistakes on PM sheets were not terminated as she was could lead a reasonable jury to the conclusion that she was terminated because of her sex. In any event, the Court finds that genuine issues of material fact exist with respect to what actually happened with the PM sheets and Defendants' motivation for terminating Plaintiff's employment. Therefore, summary judgment is inappropriate.

**CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Defendants' Motion for Partial Summary Judgment (doc. 19). This matter is SET for a Final Pre-Trial Conference on September 17, 2009, at 2:00 P.M. and for a Jury Trial on October 13, 2009.

SO ORDERED.


Dated: September 16, 2009        /s/ S. Arthur Spiegel
                                 S. Arthur Spiegel
                                 United States Senior District Judge